JOHN A. JOHNSON, TRUSTEE OF THE ESTATE OF NELS L. ANDERSON, A BANKRUPT, v. LEWIS ANDERSON.

FILED NOVEMBER 5, 1903. No. 13,106.

1. **Bankruptcy:** RECOVERY OF ASSETS: PLEADINGS. In an action by a trustee in bankruptcy to recover the proceeds of the property of the bankrupt paid over to a creditor on a judgment in completed attachment proceedings in his favor, within four months of, and before the filing of the petition in bankruptcy, it must be alleged in the petition that the preference was received by the creditor having reasonable cause to believe that the bankrupt was insolvent, and, by suffering the attachment proceedings and judgment to be taken against him, thereby intended to make a preference.

2. **Evidence:** SUFFICIENCY. Evidence examined, and found insufficient to sustain a judgment in favor of the plaintiff under the provisions of subdivision *f* of section 67 of the national bankruptcy act of 1898.

3. **Preference.** The trustee in bankruptcy may recover money paid by the bankrupt as a preference, only, when the person receiving it had reasonable ground to believe that a preference was intended.

4. **Amendment.** *Held,* That the court, in the exercise of a reasonable discretion, properly refused to allow the plaintiff to amend his petition, where the amendment tendered failed to allege that the defendant, to whom a payment was made by the insolvent, within four months before the filing of the petition in bankruptcy, had reasonable ground to believe that by such payment the bankrupt intended a preference.

ERROR to the district court for Phelps county: ED L. ADAMS, JUDGE. *Affirmed.*

*William P. Hall* and *Hector M. Sinclair,* for plaintiff in error.

*Samuel A. Dravo, John L. McPheeley, John M. Stewart* and *Thomas C. Munger, contra.*

BARNES, C.

This action was commenced in the district court for Phelps county by John A. Johnson, trustee of the estate of Nels L. Anderson, a bankrupt, against Lewis Anderson, defendant in error, to recover the value of certain property of the bankrupt which the defendant caused to be attached and sold for the payment of a debt due to him from said bankrupt within four months of the filing of the petition in bankruptcy. The petition was framed to recover under section 67*f* of the national bankruptcy act of 1898 (U. S. Compiled Statutes, vol. 3, ch. 7.), which provides: "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the

estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: *Provided,* That nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

The length of the plaintiff's petition precludes us from copying it in full, and it is sufficient to say that it alleges in substance that for a number of years prior to November 8, 1900, the bankrupt resided in Phelps county, Nebraska; was principally engaged in buying, feeding and selling live stock; that while carrying on that business he became and was indebted in various amounts to divers persons, and while so indebted, his creditors, on November 8, 1900, filed their petition in the district court of the United States for the district of Nebraska, for the purpose of having him adjudged a bankrupt under and by virtue of the laws of the United States; that he was so adjudged a bankrupt on the 16th day of February, 1901; that on the 12th day of June, 1901, the plaintiff was appointed trustee of said bankrupt; that he duly accepted such appointment, qualified, and since said time has been acting as trustee of said bankrupt estate (then follows a list of the different creditors and the amounts due them from the bankrupt, aggregating about $35,000), and it is alleged that no part of these claims have been paid. It was further stated that the trustee had not sufficient funds in his hands to pay the claims, and that the amount of the assets and money in his hands for that purpose was less than $500. It was then alleged that the defendant, on the 23d day of July, 1900, and within four months of the filing of the petition in bankruptcy, filed his affidavit for an attachment,

and procured thereon a writ of attachment to be issued out
of the district court for Phelps county, by which the defend-
ant seized and attached the goods and chattels of the bank-
rupt (describing them), of the value of $4,000, and caused
them to be sold under said attachment proceedings; ap-
plied the proceeds to his own use and fails, neglects and
refuses to account for and turn over to the plaintiff the
said property, or its value. It was further alleged that
the defendant on the 26th day of July, 1900, and within
four months of the filing of the petition in bankruptcy,
filed his affidavit for an attachment and procured thereon
a writ of attachment to be issued out of the district court
for Dawson county, by which there was seized and attached
a large number of cattle, the property of the bankrupt
(describing them) ; that thereafter such proceedings were
had that said property was pretended to be sold under
said attachment proceedings on the 16th day of October,
1900, to the defendant; that the property so taken was of
the value of $2,500; that defendant thereupon converted
the said property to his own use, and fails, refuses and
neglects to account to, turn over or pay to the plaintiff
the value of the same, or any part thereof, though often
requested so to do. It was further alleged that on or about
the 31st day of July, 1900, and within four months of the
filing of the petition in bankruptcy, the defendant filed his
petition against the bankrupt in the district court for Arap-
ahoe county, Colorado, and procured a writ of summons
to be issued out of said court by which, and through col-
lusion with one Willard Smith, defendant seized and ob-
tained property of the value of $1,000 of the said bankrupt,
and through said process issued out of the district court
defendant obtained possession of the $1,000 of lawful
money of the United States, and converted the same to his
own use, and has refused to pay the plaintiff said money,
or any part thereof. It was further alleged that at the
time of the institution of the various attachment proceed-
ings and garnishment proceedings the bankrupt was in-
solvent, and has remained insolvent ever since. The plain-

tiff prayed for a judgment against the defendant on his several causes of action for the sum of $7,500, together with interest and costs.

The answer was a general denial, and contained the further allegation that the attachment proceedings referred to in the petition were in all respects regular; that the property in question had been sold by order of the court, and the proceeds of such sale paid to defendant before the filing of the petition in bankruptcy; that the judgments and proceedings of the court in said case were in all respects regular, and remained unreversed, unappealed from and unmodified in any particular. The reply was a general denial. The case was tried to a jury upon the following stipulation of facts:

"It is hereby stipulated by and between the parties that on November 8, 1900, a petition was filed in the district court of the United States, in and for the district of Nebraska, for the purpose of having said Nels L. Anderson adjudged a bankrupt; that said proceedings were involuntary. That on the 16th day of February, 1901, said cause came on for hearing before said court, and upon the petition and the evidence the said court duly adjudged said Nels L. Anderson a bankrupt; said judgment is still in force and effect. That on the 12th day of June, 1901, the plaintiff was duly appointed trustee of said bankrupt's estate, accepted said office and qualified, and since said time, and now is acting as trustee of said estate. That at the times hereinafter mentioned, said Nels L. Anderson was insolvent, but it is not admitted by defendant that defendant knew, or had reason to believe, that said Nels L. Anderson was insolvent at the said time. That on July 26, 1900, the defendant filed his petition in the district court for Phelps county, the prayer of which was to recover the sum of $2,900 from Nels L. Anderson. That at the same time he filed his affidavit for an attachment, and procured a writ of attachment to issue thereon, which he caused to be levied upon certain personal property of Nels L. Anderson, to the amount and value of $2,125,59.

That on the 12th of October, 1900, said cause pending in the district court for Phelps county, was heard before the court, a jury being waived, and the defendant recovered judgment on his said petition, in said court, for $2,190.80, and that he had an order of sale of the attached property on the same date. That on the 24th of October, he caused to be sold the attached property, under said order of sale, and received therefor the above mentioned sum, $2,125.59. That the ground of the attachment was that said Nels L. Anderson had absconded with the intent to defraud his creditors. That the attachment proceedings in all things were regular upon their face, and the proceedings of the sale, less $68.50, $67.75 and $58.75, expenses and costs of the sale, were paid over to the defendant Lewis Anderson on said 24th day of October, 1900. That on the 26th day of July, 1900, said Lewis Anderson filed his petition in the district court for Dawson county, against Nels L. Anderson, the object and prayer of which was to recover judgment upon said petition for the sum of $1,000; that at the same time he filed his affidavit and procured a writ of attachment to issue thereon against the lands, tenements, goods and chattels of said Nels. L. Anderson, in said county, and under said writ attached the property of said Nels L. Anderson, valued at the sum of $712.25. That on the 17th day of September, 1900, the cause came on to be heard in the district court for Dawson county, a jury being waived, said Lewis Anderson recovered on his said petition a judment against Nels L. Anderson, for the sum of $812.58, and the attached property was ordered to be sold by the said court at said time, and the proceeds of such sale ordered applied to the payment of said judgment. On October 16, 1900, said property was sold for $712.25. The expenses charged for selling said property were $79.25, and the remainder, $633, was received by said Lewis Anderson at said time, the indebtedness sued upon in Dawson county being for certain indebtedness due and owing from said Nels L. Anderson to defendant Lewis Anderson, other than for the indebtedness sued upon, or for, in Phelps county, Nebraska, as hereinbefore stipulated.

It is further stipulated that said proceedings in attachment in Dawson county were in all things regular upon their face. That on the 31st day of July, 1900, said Lewis Anderson began an action in the district court for Arapahoe county, in the state of Colorado, against Nels L. Anderson, for the purpose of recovering $1,500 from said Nels L. Anderson; that at the same time he filed his affidavit for attachment, and procured a writ of attachment and garnishment, and garnisheed under said process one W. M. Smith, a resident of Denver, Colorado, and obtained upon said garnishment the sum of $840; that said money was procured on the 31st day of July, 1900, and on the first day of August, thereafter, said suit and attachment proceedings were dismissed without proceeding to judgment; that said money so obtained was the property of the said Nels L. Anderson; that all the property attached, as already stipulated, was the property of Nels L. Anderson, the bankrupt.

It is further stipulated that the said sum of money so received from said Smith, in said proceedings, instituted in Arapahoe county, Colorado, was upon indebtedness due and owing from the said Nels L. Anderson to defendant Lewis Anderson, being indebtedness other than the amount of indebtedness sued for in Dawson county and Phelps county as hereinbefore stipulated. About the 28th day of October, 1900, the fact of the receipt of the said $840 by Lewis Anderson, the defendant, and the indorsement of the same upon the note held by him against the said Nels L. Anderson, was brought to the attention of said Nels L. Anderson, and the same was consented to and approved by him.

It is further stipulated that, during all the attachment proceedings heretofore referred to, said Nels L. Anderson was absent from the state of Nebraska, and his whereabouts unknown, and that he had no knowledge whatever of such attachment proceedings.

It is further stipulated that at the present time there are, in round numbers, $35,000 in debts that have been

presented and allowed by the referee in bankruptcy against the said Nels L. Anderson, and that the assets of said estate, outside of these suits in action, amount to not to exceed the sum of $1,500; that the gross amount sued for in the rights of action is $12,000.

Said stipulation is modified as follows:

"That the property sold in Phelps county under the attachment proceedings was $1,054, sold at the sale held on October 24th; that there was a readvertisement and sale of the remainder of the property on November 8, at 10 o'clock A. M., to wit, $693.80; and that there were hogs sold previous to the sale, but not at public sale, to the amount of $377.79, but sold by the sheriff of Phelps county at private sale, and that the return of said sale was not filed in the office of the clerk of the court until November 12, 1900, and that the proceeds of said sales were paid to the defendant Lewis Anderson at the close of such sales, and that said sale was advertised to begin at 10 o'clock A. M. November 8."

After introducing the stipulation in evidence the plaintiff moved the court to instruct the jury to return a verdict in his favor, and the defendant filed a motion asking the court to direct the jury to return a verdict for him. Before the court ruled upon either of these motions the plaintiff asked leave to amend his petition by inserting therein the following: "That said attachment proceedings and steps taken thereunder were for the purpose of obtaining a preference by said defendant, Anderson, over the creditors of said Nels L. Anderson, bankrupt." This request was refused, and plaintiff excepted. Thereupon the court overruled the plaintiff's motion, sustained the motion of the defendant, and the jury, by the direction of the court, returned a verdict for him. Plaintiff thereupon prosecuted error, and now contends that the court erred in his rulings on both motions, and in directing a verdict for the defendant.

The first question which requires our consideration, is the sufficiency of the petition. It will be observed that it

contains no allegation that the petition in bankruptcy was filed before the proceeds of the attachment sales were paid over by the sheriff to the defendant. When a writ of attachment has been fully executed and the proceeds paid over to the creditor, the provision of said section 67, subdivision *f*, does not apply. That provision applies only when the rights of the creditor exist by way of *liens;* the section does not reach cases where property or its proceeds are no longer held under the writs. The language is, "That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent * * * shall be deemed null and void." The United States district court *In re Blair,* 4 Am. B. Rep. 220, held: That where the allegation was that the money had been collected on execution and received by the creditor within four months prior to the filing of the petition in bankruptcy, the petition of the trustee did not state a cause of action, but that he was required to allege and prove that the preference was received by the creditor having a reasonable cause to believe that the bankrupt was insolvent, and, by suffering judgment to be taken against him, thereby intended to make a preference. In the case of *Levor, Trustee, v. Seiter,* 8 Am. B. Rep. 459, it was held:

"Where money collected upon an execution issued upon a judgment obtained against the bankrupt within the four months' period is paid over to the judgment creditor before the filing of the petition in bankruptcy, the case does not fall within the provisions of section 67f of the bankrupt act, which specifically provides for the nullification of existing liens and for the right of the trustee in bankruptcy to receive the property of the bankrupt discharged therefrom. Although payment to the judgment creditor of money collected upon an execution, issued upon a judgment obtained against the bankrupt within four months of bankruptcy, constitutes a preference under section 60a, yet where the money was received by the judgment creditor before the filing of the petition in bankruptcy, it is not recoverable back by the trustee under section 60b, in the

19

absence of proof that the creditor had reasonable cause to believe that the banrupt, by suffering judgment to be taken against him, intended to give a preference."

In *Peck, Trustee, v. Connell,* 8 Am. B. Rep. 500, the court said:

"The bankrupt act does not take from the creditor all incentive to vigilance; he may still collect his claim from an insolvent debtor by legal process. Such process does not fall within the ban of the bankrupt act, unless the creditor shall have had reasonable cause to believe that it was intended thereby to give a preference. The intention of the creditor to obtain the preference is not condemned. The averment that the creditor had reasonable cause to believe that the debtor intended to give a preference is certainly as material and necessary to the statement in an action of this character, as is the allegation that the prosecution was commenced and carried on without probable cause in an action for malicious prosecution. * * * He who would recover back money which has been collected by the final process of a court of competent jurisdiction should distinctly aver every material fact upon which his right to recover depends."

The petition in this case wholly fails to allege that the defendant, Anderson, had reasonable cause to believe that the bankrupt by suffering the attachment proceedings, and judgment complained of, intended thereby to give him a preference.

It is contended that the court erred in refusing the plaintiff leave to amend his petition, as above stated. The amendment offered would not have cured the defect in the petition, for the reason that it does not contain the allegation above indicated. It was not enough that the defendant, Anderson, should have instituted the attachment proceedings for the purpose of obtaining preference over the other creditors of the bankrupt, but he must have had reason to believe that the bankrupt, by suffering such attachment proceedings and judgment, intended thereby to give him a preference.

Again, the plaintiff was not entitled to recover under the facts set forth in the stipulation. In order to constitute a preference the debtor must do some act to facilitate the proceedings; submissive inactivity is not enough. In *Wilson v. City Bank*, 17 Wall. (U. S.) 473, 488, the court said:

"Something more than passive nonresistance of an insolvent debtor to regular judicial proceedings, in which a judgment and levy on his property are obtained, when the debt is due and he is without just defense to the action, is necessary, to show a preference of a creditor, or a purpose to defeat or delay the operation of the bankrupt act."

In *Brown v. Jefferson County Nat. Bank*, 9 Fed. 258, Blatchford, J., observed:

"The mere existence of a desire on the part of a debtor, however strong such desire, that a particular creditor may succeed by suit, judgment, execution, and levy in obtaining a preference over other creditors, so that such preference may be maintained, even as against proceedings in bankruptcy which may be subsequently commenced, is not sufficient to establish that the debtor procured or suffered his property to be taken on legal process, with intent to prefer such creditor, if the proceedings of the creditor were the usual proceedings in a suit, unaided by any act of the debtor, either by facilitating the proceedings as to time or method, or by obstructing other creditors who otherwise would obtain priority."

It is certainly competent for a creditor to institute an attachment suit against a bankrupt, obtain judgment by default, and sell the attached property; and unless the bankrupt does some act by which he has participated in some way in the act of the creditor the preference otherwise acquired is a valid preference as against other creditors.

There is nothing in the record to show, or which tends to show, that the defendant did anything other than to proceed in a diligent, orderly and legal way to obtain the payment of the debt due to him from the bankrupt by and through proper legal process. It appears that the proceedings were wholly terminated, and the property or its pro-

ceeds were turned over to the defendant under the executed process of the court, before the petition in bankruptcy was filed, and it is not made to appear that the defendant had reasonable grounds to believe, or did believe, that the bankrupt had performed any act by way of suffering the judgment to be taken against him in the attachment proceedings for the purpose of assisting the defendant in obtaining an unlawful preference over the other creditors. Whether a creditor has reasonable cause to believe that his debtor is insolvent, and has done some act by which he has participated in some way in the act of the creditor by which a preference against other creditors has been obtained within the purview of section 60 of the bankruptcy act, is a question of fact. And, in order to authorize a recovery in this case, it was necessary for the plaintiff to aver this fact and introduce, at least, some proof in support of his allegation. The mere fact that the debtor had absconded, and was absent from the state when the attachment proceedings were instituted and carried forward to completion, is not sufficient to establish the fact that the plaintiff believed, and had reasonable cause to believe, that the bankrupt thereby intended to give him a preference. The object of the amendment to the petition tendered by the plaintiff, it is stated, was to enable him to recover a part of the property or its proceeds, together with the money obtained on the garnishment proceedings in Colorado, under section 60 of the bankruptcy act. The transaction by which defendant obtained the money from Smith in Colorado, and applied it on the insolvent's debt, with his consent, as set forth in the stipulation, amounted to a payment, and, before it could be recovered back by the plaintiff, it was necessary to allege and prove that, when defendant received it, he had reasonable ground to believe that the bankrupt intended to create a preference in his favor thereby. As above stated, the amendment tendered was not sufficient to authorize a recovery even under that section, and the court in refusing to allow the amendment was not guilty of an abuse of discretion.

We find no error in the record, and we therefore recommend that the judgment of the district court be affirmed.

GLANVILLE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.